No. 14-0207 - <u>State of West Virginia ex rel. J.C., a minor, by and through his mother and next friend, Michelle Cook, et al. v. The Honorable James P. Mazzone, Lead Presiding Judge, Zoloft Litigation, Mass Litigation Panel; Pfizer, Inc.; Roerig, a division of Pfizer, Inc.; and Greenstone, LLC, f/k/a Greenstone, LTD</u>

**FILED**

**May 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring:

I agree with the majority's holdings regarding Rule 3(a) and Rule 20 of the West Virginia Rules of Civil Procedure, but write separately to emphasize that the majority's opinion should not be read as diminishing the avenues available to litigants for challenging whether parties were permissibly joined into one action under Rule 20. The Panel's stated intent in proposing what became the 2008 amendment to Rule 3(a) clearly exceeded what was contemplated by this Court in *Cable*,[1] as the majority has fully explained. While the Panel urges us to interpret Rule 3(a) as a substantive rule creating multiple civil actions[2] and

---

[1] I have reviewed the file maintained by this Court regarding the amendment to Rule 3(a) in 2008, and its contents confirm that the purpose of the amendment was to allow for the collection of multiple filing fees where one complaint is filed naming multiple, unrelated plaintiffs, as discussed in *Cable*.

[2] The Panel forecasted its interpretation of Rule 3(a) in its Findings of Fact and Recommendation of the Mass Litigation Panel filed in *Abbott v. Earth Support Services d/b/a/ Micon, Inc., et al.* (Civil Action No. 08-C-138, Circuit Court of Wyoming County), wherein in it explained that had the *Abbott* case been filed *after* the 2008 amendment to Rule 3(a), it would have been "99 separate civil actions instead of one civil action with 99 plaintiffs[]" and would have met the definition of mass litigation under Trial Court Rule 26-04(a). Similarly, this Court's interpretation of Rule 3(a) was forecasted in the case at bar when the Chief Justice denied the defendants' motion to refer this litigation to the Panel on
(continued...)

1

warns that any other interpretation could result in West Virginia from becoming a "dumping ground for foreign lawsuits," the fact remains that there are established tools to prevent such an event from occurring. Challenges, such as a motion to dismiss based on forum non conveniens under West Virginia Code § 56-1-1a (2012),[3] or a motion to dismiss fraudulently

[2](...continued)
the basis that there was only one case, although there were nineteen plaintiff families who had been assigned multiple civil action numbers by the Wayne County Circuit Court Clerk. It was only after a second complaint was filed by additional plaintiffs that the Chief Justice granted the subsequent motion to refer to the Panel, which was filed by the plaintiffs.

[3]West Virginia Code § 56-1-1a provides, in part, as follows:

> a) In any civil action if a court of this state, upon a timely written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: Provided, That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this state. In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the doctrine of forum non conveniens, the court shall consider:
>
> (1) Whether an alternate forum exists in which the claim or action may be tried;
>
> (2) Whether maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
>
> (3) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(continued...)

or improperly joined parties,[4] are available to litigants.  In short, misjoined claims and parties

[3](...continued)

>(4) The state in which the plaintiff(s) reside;

>(5) The state in which the cause of action accrued;

>(6) Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the state include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the state; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty;

>7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

>(8) Whether the alternate forum provides a remedy.

[4]Rule 21 of the West Virginia Rules of Civil procedure provides:

>Misjoinder of parties is not ground for dismissal of an action. Parties maybe dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.  Any claims against a party may be

>(continued...)

may still be addressed through appropriate procedural and substantive challenges.[5]

I also agree with the majority that Rule 3(a) cannot be interpreted in a manner that essentially nullifies Rule 20, which provides that "[a]ll persons may join in one action as plaintiffs . . . ." While I appreciate the Panel's argument regarding the manner in which Rule 3(a) dovetails with Trial Court Rule 26.04(a)(2) as it pertains to "civil actions," the Panel failed to address permissive joinder under Rule 20 in its brief filed in this Court, even though the interplay between Rule 20 and Rule 3(a) was the focus of the other parties' arguments in this matter. In fact, the Panel's lack of discussion in this regard is arguably an implicit recognition of the conflict between Rule 20 and the Panel's interpretation of Rule 3(a). Additional rule amendments and revisions may well be necessary to address the Panel's litigation management concerns, but it must be done in a manner that does not affront permissive joinder.

Lastly, I do not understand why the majority felt compelled to recommend the Federal Judicial Center's *Manual for Complex Litigation*, Fourth (2004), to the Panel as a

---

[4](...continued)
severed and proceeded with separately.

[5]Also, as the majority explains, the Panel may use procedural mechanisms to procedurally (but not substantively) divide plaintiffs into relevant groups, or to "devise a scheme" that permits the defendants to raise assert dispositive motions based on issues such as statute of limitations as to certain plaintiffs.

"good source of suggestions on how to efficiently handle complex mass litigation issues[.]" The majority quotes the federal manual's definitions of "liaison counsel" and "lead counsel," as if these definitions and ideas are a novel concept, when our own Trial Court Rule 26.05 already defines these very terms. And, given the obvious similarities between the definitions of these terms in the federal manual versus our Trial Court Rules, our definitions may well have been based on the definitions in the federal manual. Indeed, I am confident that the Panel has utilized this federal manual on many occasions for guidance and "suggestions" in its development of mechanisms and plans for organization and procedure of mass litigation. Consequently, I find the majority's recommendation of this federal manual to the Panel to be unnecessary.

For the reasons set forth above, I respectfully concur in the majority's holdings, as reflected in its opinion.